Case No. 18-5145 et al. American Great Lakes Ports Association et al. Appellants v. Karl L. Schultz in his official capacities as Commander United States Coast Guard et al. Mr. Bennett for the Appellants Ms. Lyons for the Federal Appellees Mr. Longstreet for the Intervenor Appellees Good morning Good morning, Your Honors And may it please the Court I'm Jonathan Benner, appearing for Appellants who are Great Lakes situated maritime businesses, ports and vessel operators all of whom are impacted by pilotage costs imposed by the United States Coast Guard This is part of an annual rate-making exercise mandated by the Great Lakes Pilotage Act This mandate directs the Coast Guard while it's not particularly detailed in its instruction it does say that the Coast Guard shall set these rates in consideration of the public interest and the cost of providing the service As you no doubt divine from the papers before you this cause arises against a backdrop of a multi-year effort by rate payers and other affected entities to really going back to the 2015 navigation season to try to grasp hold of this annual rate-making process and to impose some what they regard as fairness and regularity to the process by which the Coast Guard takes data and transforms this through a fairly elaborate formula into hourly rates that are paid by these rate payers We brought to this court three elements of the District Court's disposition of the matter Two of these are challenges, APA challenges to the Coast Guard's determination about staffing levels Staffing levels drive costs very heavily in the Coast Guard's formulation This has been referred to in the papers as the peak staffing model that the Coast Guard imposed And issues related to retention, attrition, recruitment which also form the basis of the Coast Guard's determination of staffing levels  They feed on each other We also bring before the court an inadequacy of remedy issue that was raised by the District Court's disposition of the weighting factor error that the District Court found This is a fairly glaring obvious avoidable deficiency both in the proposed rule that the Coast Guard put out and in its final rule in which the Coast Guard simply neglected Despite fairly vociferous, we believe finger pointing by us to the problem an element of the rate calculation which resulted in an arithmetic problem with the final rule The arithmetic problem was that because the invoicing to the rate payers includes a multiplier that's based on the size of the vessel and that multiplier ranges anywhere from 1.0 up to 1.4 1.45, maybe 4.5 Yes ma'am If you could say we were to agree with you as to that question What remedy is available to us? That's a question that I have been thinking through If we were to vacate the 2016 rate as you would prefer What is left for the agency to do? I mean, how do they impose a new rate without running afoul of retroactive the prohibition on retroactive rate making in Bowen and other cases? Judge Rowe, I think you're at the heart of probably what the discussion is going to be today What is the remedy for this? We have proposed various remedies as this has progressed just because over the course of getting this issue litigated the backdrop has changed I think the starting point for us on remedy is that the 2016 rates which were established by the final rule that we contest are no longer in effect By the time the district court issued its first merits opinion on that we had a proposed rule for the 2017 rates By the time it issued its remedy order the 2017 rates were in effect and the 2018 rates had been proposed Right now we're operating under 2019 rates So, to come back directly to your question What we have proposed is simply that given the effect of the weighting factor which was essentially to confiscate money from the rate payers and direct it to be transferred to the pilotage monopolies that the Coast Guard supervises that at a minimum there should be clear direction to the agency to credit those excesses back The agency itself has said that the calendar year 2016 average is $5 million How does it credit those amounts back without effectively doing calculating what the rates should have been? Isn't that what they would have to do in order to determine the amount of what would need to be credited? I understand the question, Your Honor It's an adjustment to the billing It's not a re-imposition of a new rate for 2016 The 2016 rates are dead These are billing errors that the Coast Guard essentially ordered Whether it's a refund or a credit we say it can be either The rate payers It's very easy to back out of the invoices The invoices reflect a multiplication of on average 1.28 times the hourly billing rate You divide out whatever the waiting factor error was and you revise those invoices If it's done by credit to rate payers or it's done by refund it's not particularly important to us But if nothing is done then we have a situation where we estimate in the neighborhood of $12 to $13 million was extracted from the rate payers directed to the pilots for no services rendered and on no cost basis No costs were incurred by the pilots to gain that money It was a windfall How does the credit work? The credit would simply work invoices for the 2016 period By the way, that period was attenuated It ran all the way into the fall of 2017 Any invoices during the time when the 2016 rate was in effect should be revised to make that arithmetic correction to correct the windfall The money's gone from my clients and we're saying that this is a statute that requires rate making based on cost There's no underlying cost for that No service was provided But I guess what I'm asking about how does the credit work is how mechanically is there a shift of money that gives you what I assume you're looking for? Yes, I mean, either if it's a refund there'd be a direct payment back if it's credited because the rate payers tend to be repetitive rate payers if there's a credit they would have a credit going forward in future cycles Mandated by the agency Yes I mean, I'd be perfectly happy for the pilots to do this because they're good citizens but I don't think at this stage we're going to see that happen And that doesn't pose a retroactivity problem? I don't think it does I think the prohibition against retroactive rate making does not apply in a situation where there's an effort to correct an obvious arithmetic error We're not saying that the 2016 rates now have to be reestablished and reapplied We're saying that the Coast Guard enabled a windfall that it should not have and that we know exactly what it is we can calculate it pretty accurately and there should not be a system Congress probably didn't contemplate a system where this kind of government error goes unremedied I don't understand I must be missing something because if you're not contemplating a reestablishment of rates for 2016 then what happens after a vacator? Because what you're asking for the district court gave remand without a vacator That's right You're saying there should have been a vacator We are But the way you want the vacator to work out is through a credit Because then if there's a credit then going forward at least you feel like you'll be made whole for amounts that we were deprived of with respect to 2016 But if there's a vacator of the 2016 rates then there's nothing in place for 2016 But there needn't be anything in place for 2016 at this point when we're operating under 2019 rates at this time This is simply a look back and correction The Coast Guard has in its own regulations we've cited them in our papers the ability to order corrections of invoices Can they do that without a vacator? Possibly they could I'm just not understanding where the vacators fit into this because if it's going forward Judge Sreenivasan, our argument about vacator is that it is the sort of default or presumptive response to a finding of an unlawful rule Here we have a rule that had several moving parts We did not ask for review by this tribunal of the other element of the rule that the district court found unlawful We believe that the district court over-analyzed or over-relied on the disruption prong of allied signal to decide not to vacate I suppose that if the remand order is clear enough and I think the district court thought it was that the Coast Guard was going to do something about this and that there would be a remedy the remedy would occur whether there was a vacator or not We still believe that vacator was appropriate and we don't believe it has the disruptive effects that the district court feared This is what we're arguing on vacator or we believe that the district court had the authority as allied signal said to cut out that which was excessive in the disposition in its disposition of our APA challenges and address those directly without moving the whole rule as a knowledge I'm not sure though that it makes any difference whatsoever other than in the abstract as to whether given the applicability of the 2019 rates now whether the 2016 rates are in place or not As a practical matter since the rate making occurs annually each new rate is put in place and that rate would probably expire before judicial review runs out over the rate in most instances between the district court and if there's appeal would you anticipate this happening each year it seems historically one side or the other is unhappy with the rate so do we have a system where we have these appeals and then the agency has to continually correct and reallocate and adjust invoices when there are errors and how do you envision that working practically It's something that we're in the midst of so as you have discerned but it's a relatively recent phenomenon that these rates are being challenged What's happened is there's been substantial increase in the costs that have motivated the need for litigation I certainly wouldn't expect this to occur but you're correct your honor we're on something of a conveyor here because of this annual rate making and one of the reasons the 2016 rule draws our attention at this level is that it's assumptions and conclusions carry over into each new rule and if we don't get a grip on it now it becomes something that's subject to repetition that evades review in perpetuity That is another question I had if we were to vacate the 2016 rule how would that impact the subsequent rules 2017 through 2019 does it undermine those rules since you say there's a logic in the 2016 rule that's carried forward No I think in terms of the rules themselves as opposed to issues that may be raised by discussion in comments or discussion in supplemental information in the rules the rules stand on their own two feet the pilots challenged the 2017 rule because of a provision relating to expensing of attorney's fees So given some of the objections raised by the agency in light of allied signal and the district court's reliance on disruption as a practical matter if I had paid $500 too much do you see me as getting a credit toward the 2017, 2018, 2019 rate that's how it would work you wouldn't go back to the original recipient of the extra $500 the pilot well the your honor the money has changed hands from the rate payers to where is the money the money is in the pilot's hands I know, so that's my point and the agency says well the pilot may have spent the money etc so it's not as though it could go back to the pilot because I understand the agency's position but it would be too difficult to do that but all the questions that Judge Rao is raising it seems to me come up and we see this all the time in other agencies where Congress has specifically authorized the agency to grant refunds make corrections now you refer to the agency's authority to correct invoices do you think that's broad enough to cover the type of credit refund remedy you're seeking is that your argument? yes because the invoice reflects a weighting factor multiplier that was not contemplated by the rule itself and so I mean to us it seems glaringly obvious that the Coast Guard should have considered it it seemed that way to the District Court I think but the Coast Guard has that authority the Coast Guard also the courts have the authority to remand in a way that requires an effective remedy getting to the initial part of your question hypothetically the rate payer pays $500 we've couched this as a refund or a credit the credit to us seemed to address a convenience issue for the pilots what we are trying to avoid though and we do not think a cost based rate setting system permit is for that money just to be sunk just to be lost I understand that but the pilot let's assume I received $500 and I've spent it so are you saying that in 2019 I would not get whatever it is $700 I would only get $200 because I had that extra $500 is that the way you commonplace this? This is just a book keeping calculation the calculation yes is just arithmetic and indeed our credit proposal is simply that rate payers and by the way one of the things we are trying to do is to ensure that the people receiving redress here are the people who paid the rates assuming that can be demonstrated if you can't demonstrate then that's another issue that's not the agency's objection as I understand it the agency's objection I think is it's too hard well it's a burden but it's a burden to take millions of dollars and we believe the number is somewhere in the range of 10 to 15 million dollars and just transfer it is that the authority to correct invoices is sufficiently expansive to authorize the agency to come up with a refund credit remedy yes your honor and regardless of that authority we say that the court the reviewing courts in light of the APA violation have every right to direct the coast guard to provide an effective remedy what happened here is to provide an effective remedy the district court sent this back the district court said it's best to leave it to the agency in the first instance excuse me your honor send it back as to the future well it's it's not clear the district court our issue with the district court on the remedy is that it it offered an essentially ineffectual remedy the coast guard did nothing the coast guard's response to this I thought what Judge Rogers is asking you I think is that if we focus on the credit part of your suggested way to resolve this then what would happen is if you think it's 10 to 15 million dollars that was shifted over to the pilots that shouldn't have been shifted over to the pilots then what you would see as the appropriate way to resolve this by way of credit would be in the future there would be 10 to 15 million dollars that would otherwise go to the pilots that would be that would not be charged to the shippers that's correct so it would be a shift back it's just that temporarily it wouldn't be go back to the pilots and say hey fork over 10 to 15 million dollars that you shouldn't have gotten for 2016 it would be forego 10 to 15 million dollars that you would otherwise get for 2020 because that's the amount that you got in 2016 that you shouldn't have yes we have no legal clause about suggesting to the court that it should be a refund we've offered this alternatively though because we understand that there are convenience issues involved that may suggest a credit but we keep coming back to the point how can it be to let stand that this error simply transferred these substantial funds with no provision of service and no cost incurred the statute does not contemplate that alright why don't we hear from the agency thank you very much good morning I'm Jane Lyons I'm from the U.S. Attorney's Office and I'm here on behalf of the Coast Guard may it please the court the district court found that the Coast Guard's rate methodology adopted in 2016 was generally sound the Coast Guard here did not face based on the district court's finding that two aspects of the rule were not sufficiently justified they did not face what my friend on the other side has characterized as an arithmetic problem at the very least it's an algebra problem and I hate to go to math quickly but there we are this is not a simple problem that could be quickly remedied as Judge Rao pointed out early in the argument the correct rate would have to be found in order to do these adjustments to the billing invoices as has been suggested and that is not a simple matter why not pardon me your honor why not the first thing the district court found was that using the Canadian pilot base rate with a 10% increment had not been sufficiently justified to account for the difference between the Canadians being government employees and the pilots not being so rates as high as 35% had been recommended or suggested in some of the comments the Coast Guard had received so it's possible that in fixing that problem if they had to go back that rate might go up and it's hard to it's impossible to see how the offsetting effect of accounting for the weight factors and this problem how that would mathematically work out wouldn't that happen anytime an agency has to correct an invoice it's saying this invoice is in error well no and that gets to the nature of the judicial power and APA review in other words I understand how you want to characterize this but I'm not sure that's dispositive whether it's calculus or arithmetic or algebra yeah at the very least I think we can agree it isn't very easy on it's face because if no we don't know I mean I understand agencies every year has to come up with these calculations so it knows how to do it well it knows how it's doing it now and that's an interesting point but it knows how it has the records for how it was doing it in 2016 for 2016 yes it does I'm not suggesting it's as simple as adding one and two together but it's not an impossible task it has to do this and Congress has authorized it to do it Congress has authorized it to make a new rate every year Congress has not authorized a retroactive rate to be imposed again you're putting labels on things and I just want to be clear that that's the way the court should view it because hypothetically suppose the agency acknowledges the 2016 rates were 20% too high so everybody gets a 20% credit going forward equal to whatever that 20% is in dollars and cents so I think what the district court correctly recognized here is that there are a variety of ways in which the agency could decide to implement that sort of a correction it might be perhaps overly onerous to do it in a single year and so you might phase that in over three years or something and because there is an annual rate making and because there's a federal advisory group that gives the agency input that it has to take account of and because it has the benefit of viewpoints from the different constituencies it is a measured but meaningful remedy to tell the agency to go forward and do whatever it wants to do in a prospective case Regarding the fact that I'm out $500 It's not clear that you are out $500 and I do disagree with my friend on the other side's suggestion that no services were provided for those instances the transportation took place the pilot was there there is a possibility that the rate was higher than it would have been if the Coast Guard had done everything properly I may just In 2017 you corrected the waiting issue After 2016 they corrected the waiting issue Can I offer a brief perspective on that issue? It's not as glaringly obvious as it has been portrayed The Coast Guard changed the way it calculated base rates in 2016 Historically it had been applying waiting factors for many years and in fact historically they had been below 1 so they would have reduced the rates if that had still been the case by the time of 2016 they had not stopped using rates below 1 Let me just ask this question Suppose that it's commonly understood and you may disagree with the premise but just bear with me on the hypothetical. Let's just suppose that it's commonly understood that the rates were too high in 2016 because of a failure to take account of waiting and then let's also suppose that however difficult it is, somebody could go back and redo the calculations to decide oh if we had taken into account waiting then here's what the rates would have been and here's what would have been paid over Might be difficult to do but let's just say that you can do that Then in your view does the Coast Guard have discretion not whether they should be mandated to do it but do they have discretion going forward to say okay now we've done that we realize that the waiting wasn't taken into account it should have been we've also done all the calculations to figure out what a difference that would have made they say 10 to 15 million dollars, maybe the Coast Guard says no it's like 2 million dollars, I don't know but let's just whatever the Coast Guard comes up with and then they say well here's what we're going to do. Now we see that actually the shippers were charged 2 million dollars too much and what we're going to do is we're going to effectuate that going forward by starting in 2019 or 2020 you could do it over 3 years as you say but somehow we're going to make up for that 2 million dollars by reducing the rates on the proportionally appropriate basis to achieve rough equity Yes absolutely there is discretion in the rate making and there's a last step of the 8 or so step formula that provides for exactly that type of adjustment on the Coast Guard's discretion and that's exactly how it should be taken account of and it is to Judge Rouse's point about this sort of what happens then is there more litigation? Yes but what we don't have, the alternative is to have this case stay open and recycle annually and instead what you have is a more crisply, you have a new agency action to be challenged on the basis of the record at that time and a new exercise of discretion and I think that's a better outcome. And the new agency action is triggered how? The new rate making in which the Coast Guard either applies the discretion somebody's going to sue let's just assume that when they exercise their discretion in that fashion if the shippers say it should have been 15 million dollars and you only took account of 2 they'll sue and if the pilots are unhappy they'll sue. But what's going to spur the Coast Guard to take account of it at all going forward? A couple of things. Could be the advisory committee makes recommendations to do that based on the district court's decision and the district, let's remember here the Coast Guard acted on the waiting factors issue before the district court employed any remedy at all. For 2017 For 2017, they went right out in April, put out a supplemental notice of proposed rule making and said hey this is what we're going to do, this is how we're going to go forward. And what if the Coast Guard doesn't? Let's say is there an action that can be brought to compel the Coast Guard to take it into account? If your problem is if your objection is this shouldn't be done out of the auspices of this litigation but it can be something that the Coast Guard takes into account going forward. And the shippers say it's 2024 we're still owed money for 2016 the way we calculate it. You guys keep talking about potentially doing something, you haven't done anything what then? They could bring as they have, they're pending actions in the district court about the 2018 and the 2019 rule making, they can bring an action for agency action unreasonably delayed for example, that's a claim under the APA. But more, they're not going to even need to use that because they will have made comments to the notice of proposed rule making and when the final rule comes out if it's arbitrary and capricious for the agency not to have acted appropriately in the ordinary course. What statutory authority does the Coast Guard have to take into account, you know, say a miscalculation in the past and apply it to shippers and pilots in the future, which may or may not be the same. You know, I understand they're only for P players but they may be some different players. What statutory authority do they have to take something from the past and implement that in the rates going forward? Inherent in the rate making function generally is some discretion in this particular scheme costs is the driver in the statute. But it's not the cost of what's actually happening. But it's a past cost that might need to be it might need to be considered. I believe that would be within the agency's discretion and actually, your question it's important to remember. So you would put it under the cost prong because they have to look at the public interest and the cost. Yes. You would think it's part of the cost. Yes, Your Honor. Even though there are two sets of private entities which may or may not be identical in the future rate making. Yes. So what you're saying is that it's possible that pilots working in 2020 who perhaps were not even working in 2016 would be suffering a lower rate than they might otherwise be getting. Right. Yes, that is possible and part of being in a regulated community. And you think the Coast Guard has the authority to do that? I mean, because that won't be the actual costs of that year. Yes. The statute doesn't talk in terms of setting a rate that is limited to costs for that year. The statute's not that specific. It's perhaps inherent and it might make an interesting challenge. This is not something I've thought through totally or had an opportunity to talk to the Coast Guard about. I assume, though, that I don't want to I would like to say one more thing about your question, though, and it's this. If it were to pass that the Coast Guard were to say we're going to impose this we're going to take money away from pilots and force it. I'm not even sure they have the authority to do this. But to order those payments to shift that way, I'm not really aware of Coast Guard authority to do that. I'm wondering if they have authority to do either one, maybe. It's possible that they don't have. I think they probably have authority to make some account for it in a rate making. It would be better and I think it would be better if it were sooner, right? So if the litigation happens and the district court gives direction, as happened here and then the Coast Guard does what it thinks is appropriate as quickly as it can, that's the best outcome. And that's what we have here. We have meaningful direction and just insight that they gained from the litigation that caused the agency to act. It may not be in a way that completely pleases either party. I mean, I assume this happens that when in a rate making capacity some commenter will come in and say, you know, there's something that just hasn't been taken into account that's been going on for years. And then the agency will then say, all right, you're right, we need to take that into account and we'll take it into account going forward. This just happens to be more, it's a discrete instance of something that happened within the confines of a particular 12-month period and then there would be the ability on the part of the agency, perhaps not the mandatory obligation, but the discretionary ability on the part of the agency to take that into account and then offset it by things that you raised. Or not. Or decide not to. And the closest case I can point you to As long as it's recent decision making not to do it. Right. And this Court has held in a similar kind of context that doing so without notice and comment procedures was even available to the agency. And that's Methodist Hospital of Sacramento v. Shalala, 38 F. 2nd 1225. It's a decision from this Court in 94 that addresses that issue that said it was basically reasonable to adopt somewhat by implication a policy of not imposing the retroactive correctiveness and maybe it was out of the concerns that you're expressing, Judge Rapp. So that's the closest case I can point you to on this. The Court has no further questions. Thank you. The District Court affirmed. We hear from counsel for intervener. Thank you, Your Honors. I know you've been through a lot, so I'll just make a few quick points. Mostly just, I think, kind of correct thoughts on what's going on. First of all, to start with the question of statutory authority, I think that is an issue and I think Judge Roberts, you pointed out some statutes specifically provide for that authority. FERC is one. Under the refunds, there's specific statutory authority. You have to give notice. There's a refund effective date. It used to be 60 days. Then it's not. That's exactly the kind of statutory authority we don't have here to go back. And the Coast Guard has taken the position that government counsel responds to questions about discretion. I understand she doesn't want to give up her agency's discretion, but really, I think she kind of wound up being agnostic on whether they have that authority. I don't think they do, and the Coast Guard, certainly in the past, has taken the position they don't have that authority. You heard her. She wasn't agnostic. She said she thought. Well, then she said she hadn't really thought it through and she wasn't speaking with the Coast Guard. I can tell you that when we raised this issue in the 2014 rate, and that was a very different case, because that really was, yeah, there was sort of a formula and they did it. We raised that issue. The Coast Guard definitely took the position they did not have the authority to go back and order refunds. We had a refund hearing in front of Judge Chodkin. She didn't seem all that anxious to wade into the issue, and so we settled out. Well, there's a difference between a refund in the past and also taking into account what's happened in the past in future rate makings. Do you think the Coast Guard has the authority to do that? Yeah, I think that's right, and I think this case provides a good example of, I think, first of all, just to correct an error that appears in the appellant's briefs. Judge Contreras did not find that they were overcharged. As a matter of fact, when they kept arguing that he found the overcharge, he specifically said in his remedy hearing, no, they're misunderstanding my argument. I just said they had to consider the weighting factors. They could have come back and kept the rate in place. They could have kept it higher. They could have kept it lower, but this notion that he found an overcharge that's unremitied is completely inconsistent with his ruling. He specifically said that hadn't happened. They could have come back and said, yes, we were right not to consider the weighting factors in 2016, and I think it kind of goes a little bit to Judge Rouse's point. One of the reasons I think they did that, and it goes to this kind of taking into account of past history. I think Judge Genevesan did that. Any agency can take account of what's been going on. The weighting factors issue was presented in the 2016 rate. The industry came in and said, look, you should take these into account in projecting revenues, and therefore you should lower the rates. And the agency's looking at a situation where they needed to raise the rates for all the reasons that the Coast Guard said that were amply supportive and that Judge Contreras-Founder actually supported, and we need to have more pilots. And we're a little bit worried because when we've been projecting revenues in the past, we've been to, we've overprojected. The revenues have come in lower. Year after year after year, the revenues have come in lower. So you're telling us now, industry, we should lower the rates because we should change the projections to project higher revenues from this, but that hasn't been our experience. So you may have a point, we'll look at it for a year, and then we'll change it, which is what they did. And that was their understanding. That was how they kind of took it into account going forward. Faced with it in 2016 with a history of overprojecting revenues, they were reluctant to reduce their projection of they were reluctant to increase their projection of revenues, but they didn't want to fix it then. They wanted to fix it after they had the experience in 2016. They had the experience in 2016. They changed it going forward. And I guess this gets to the last point I want to make, and I think it goes again to Judge Rao's statement. We've got this endless loop where every year you're litigating the rate and then you're going back and settling, you know, upsetting settled invoices, which is not the way the rules that we're in place work. That's just never been the way it's been done. You know, we were underpaid for many years. We didn't go back and say, hey, you projected revenues of X. The revenues came in at 90% of X. Here, industry, here's your bill for the 10%. We went back into the next rulemaking and said, look, you've been underprojecting revenues. Fix it this time. And then ultimately, finally, in 2016 they fixed it. Finally, we got a decent rate increase, and of course the rest is history. They've been litigating every rate since then. Can I just ask, are there any efforts for legislative change to the statutory scheme? The only recent legislative change was the change that required the rates to be set every year. And that was in 2005, and that was actually the result of litigation because the agency had been delaying rate increases for so long that finally Congress said, look, you've got to do this every year so that you can keep up. And of course, what that also... That was in 2005. And of course, that's one of the reasons we have the big rate increases that they keep complaining about is they were so low for many years because the Coast Guard never got around to the change. Now we've got to have a change every year, and I think that allows you to sort of fix the problems. If the industry identifies a problem, they identify a problem, it can then be taken into account in the rate going forward. But we've never had a circumstance, and Judge Contreras found this in the... We've never had a situation where when that's fixed going forward, we then go back and upset all the invoices that have been issued before. Thank you. Yes, counsel. Thank you. I would first like to address my friend Mr. Longstreet's point about the history of this. Since 2015, every year, the Coast Guard's projected revenue figures have been exceeded by the actuals by significant percentages. On average, over the whole period, it's been 30%. The rate payers see this, and the affected businesses see this exactly from the other end of the telescope on that. What we have is a system that routinely overgenerates revenue by significant amounts, and has year after year after year since 2015. That explains, in part, why we're in this period of litigation. The rate payers prior to attacking this 2016 rule had not actively litigated these things. I don't want the court to walk away with the opinion that it's inevitable that there's always going to be one side or the other fussing about this, and the agency is just stuck in the middle. The pilotage costs are now the highest single cost for a vessel operator once the vessel comes into the lakes. These pilotage costs have risen by double-digit percentages, and they're completely out of phase with the Canadian pilots' costs, so this is a problem that we'll have to constantly address. Going back to the issue of remedy, the Coast Guard knew when it issued its supplemental notice of proposed rulemaking in the spring-April of 2017. It had a year-end financial picture of what the 2016 rates had done, and they said, you're right. They didn't say you're right. They said they have overproduced by roughly 28%, which is exactly what we predicted because of the arithmetic certainty of the error. We knew what the average weighting factor was. We knew that the Coast Guard didn't account for it. The Coast Guard did nothing. While the rates were still in effect, the Coast Guard could have done something. The rates were still in effect. They remained in effect for almost an entire additional navigation season. The Coast Guard did nothing. The Coast Guard did nothing on the remand from the District Court to address this in terms of a remedy. Judge Contreras told them, we'll give you the first shot at this remedy, and nothing came back. In fact, the silence while our 60-day clock was ticking on the appeal was why we're here before you today. They were going to do nothing about it. Approximately $10-15 million has transferred, and I would take issue with Ms. Lyons' statement. A service wasn't provided for this. This is just a tax, essentially. It's not a cost-based amount. It is an arithmetic error. The Coast Guard has authority to change this, either because the Court directs them to do so by providing an effectual remedy, or because it has inherent authority in its own race to adjust these past invoices. My time has expired. I would, with the indulgence of the Court, just like to say we have also raised two elements that we've not addressed here today. These are brief. Particularly though, I would draw the Court's attention to the fact that there is a detailed Coast Guard study in the appendix of JA 476 that we believe was the best in the curriculum data the Coast Guard had available to it, and it did not follow it. And we would ask that attention be paid for that. Thank you. I'll take the case under advisement. Thank you, Your Honors.
judges: Rogers, Srinivasan, Rao